UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

UNITED STATES OF AMERICA,

Plaintiff,

v.

WASHINGTON DEPARTMENT OF
TRANSPORTATION, AND SOUTHGATE
DEVELOPMENT COMPANY,

Defendants.

Case No.  C05-5447 RJB

**ORDER GRANTING PLAINTIFF'S
MOTION TO LIMIT REVIEW TO
ADMINISTRATIVE RECORD; AND
ORDER GRANTING PLAINTIFF'S
MOTION FOR A PROTECTIVE
ORDER LIMITING DISCOVERY**

This matter comes before the Court on Plaintiff's motion to limit judicial review to the administrative record and motion for a protective order limiting discovery.  Dkt. 57.  The Court has considered the pleadings filed in this matter and the file within.

## FACTUAL AND PROCEDURAL HISTORY

This dispute arose over the response and clean-up costs regarding the release of hazardous substances at the Palermo Wellfield Superfund Site in Tumwater, Washington.  The United States seeks to recover both past and future costs incurred by the Environmental Protection Agency and the U.S. Department of Justice in this matter, pursuant to Sections 107(a) and 113(g)(2) of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA").  *See* 42 U.S.C. §§ 9607(a), 9613(g)(2).

According to Plaintiff's Complaint (Dkt. 1), the Palermo Wellfield Superfund Site consists of a contaminated drinking water aquifer, including contaminated surface water and groundwater, in the vicinity of the Palermo Wellfield and Palermo neighborhood, both located within the Deschutes River Valley and the adjacent upland area to the west.  The Palermo Wellfield provides drinking water for the City of Tumwater, Washington.

Routine sampling by the City of Tumwater on August 3, 1993, detected the chlorinated solvent trichloroethene ("TCE") in three of the City's wells at levels up to 12.6 micrograms per liter ("*ug*/L").  Additional sampling performed on August 6, 1993, confirmed these results, and a field investigation conducted that month revealed the presence of TCE in groundwater and scattered low levels of trans-1,2-dichloroethene ("DCE") and perchlorethene ("PCE").  The City of Tumwater then notified the public regarding the discovery of TCE in the three contaminated wells and removed those wells from service.

The EPA proposed the Site for addition to the National Priorities List ("NPL") on December 23, 1996, and added the Site to the list on April 1, 1997.  *See* 40 C.F.R. Part 300, Appendix B.  The NPL is a national list of hazardous waste sites posing the greatest threat to health, welfare, and the environment.  The NPL has been established pursuant to Section 105(a) of CERCLA, 42 U.S.C. § 9605(a).

An EPA contractor initiated removal actions at the Site in March 1998 to address immediate risks to human health and the environment from TCE and PCE in soil and groundwater.  One component of this removal action consisted of the installation and operation of a soil vapor extraction ("SVE") system at the former Southgate Dry Cleaners location.  The purpose of this action was to remove PCE from soil in order to halt its ongoing release to groundwater.  The SVE system began operation in 1998 and was decommissioned in June 2000.  The EPA estimates that the SVE system removed approximately 425 pounds of PCE from soils beneath Southgate Dry Cleaners.

A second component of the removal action was the installation of two air strippers at the Palermo Wellfield to remove TCE from the city's well water.  The air stripping system was completed in 1999 and successfully reduced TCE in treated water to below laboratory detection levels.  The three Palermo wells that were shut down due to TCE contamination have been returned to

1    production.

2          On November 16, 1999, the Regional Administrator for EPA Region 10 signed a Record of

3    Decision ("ROD") documenting the long-term remedy selected for the Site.  The ROD called for the

4    continued operation and maintenance of the SVE system and the wellhead air stripping system.

5    Additionally, the ROD required (1) the installation of a subdrain system and construction of a

6    treatment lagoon west of the residences on Rainier Avenue to collect and treat PCE and TCE-

7    contaminated groundwater that is surfacing at the base of the Palermo Bluff, (2) appropriate

8    governmental notification regarding the areal extent of groundwater contamination to ensure that

9    additional supply wells are not placed in contaminated sections of the aquifer, and (3) initiation of a

10   long-term groundwater monitoring program.

11         According to Plaintiff's Complaint, the two defendants named in this action were primarily

12   responsible for the release of the above hazardous materials into the environment, which ultimately

13   contaminated the Palermo Wellfield Site.  Dkt. 1 at 6-9.

14         Southgate Shopping Center consists of about five acres and is located at 5203 Capital

15   Boulevard, Tumwater, Washington.  Southgate Development Company ("SDC"), a Washington

16   corporation, owns Southgate Shopping Center and has owned it since 1960.  Southgate Dry Cleaners

17   has been in operation in the Southgate Shopping Center since 1964 and has used dry cleaning fluids

18   containing PCE since that time.  Throughout the area of the Southgate Shopping Center, PCE has

19   been detected in soil samples collected from the ground surface to where groundwater is encountered.

20         The highest PCE concentrations observed at the Palermo Wellfield Site were collected at the

21   base of a sump inside the Southgate Dry Cleaners, and groundwater samples in the area of the

22   Southgate Shopping Center contained PCE concentrations exceeding 900 parts per billion (ppb).

23   Plaintiffs allege that PCE was disposed of in this sump and was released from this sump to subsurface

24   soils and groundwater from at least the mid-1970s until at least 1990, when waste disposal records

25   indicate that PCE waste may no longer have been disposed of in the sump.

26         During the late 1960's and early 1970's, the Washington Department of Transportation

27   ("WDOT") operated a small materials testing laboratory on a leased parcel on the southwest corner of

28   the intersection of Trosper and Littlerock Roads in Tumwater.  TCE was used at this facility and, for

some period of time, waste TCE reportedly was disposed of on the gravel driveway behind WDOT's testing facility.  According to the United States, sampling in the area of the gravel driveway has detected TCE in the near surface soils, as well as in the groundwater and in subsurface soils.  This sampling data is consistent with disposals of TCE in the area of the driveway during WDOT's lab operation on the property.

WDOT also owns and operates a materials testing facility located at 1655 South Second Avenue in Tumwater.  WDOT began using TCE at this facility before or during 1970.  A 600 gallon underground storage tank was installed in 1970 adjacent to the west end of the testing facility.  Floor drains, as well as certain laboratory sinks, drained to a concrete trench beneath the floor of each laboratory.  A WDOT contractor issued a report in 1996 noting, among other things, that "there was a known release" from the tank in 1970.  Dkt. 1 at 8.  This report also contains observations that the release had flowed back into the facility through the concrete trench and that the ground above the tank was wet.

The 600 gallon underground storage tank was removed in 1996.  Prior to its removal, the tank was filled with fluid.  A sample of the fluid prior to the tank's removal confirmed the presence of TCE. A soil sample taken from the base of the tank excavation following the tank's removal also detected TCE.

According to Plaintiff's Complaint (Dkt.1), the EPA notified the State of Washington several years ago regarding its alleged liability in this matter in accordance with CERCLA Section 121(f)(1)(F), 42 U.S.C. § 9621(f)(1)(F) and the NCP.  The EPA and the State of Washington have engaged in negotiations for approximately two years over who is responsible for the costs incurred by the United States.  Those negotiations have been unsuccessful.

On July 5, 2005, the United States filed this action in federal court contending that it has incurred more than $11 million in costs to date in relation to the response and clean-up of the Palermo Wellfield Superfund Site.  Dkt. 1 at 6.  The United States seeks (1) reimbursement of all past and future costs to be incurred in this matter, and (2) a declaratory judgment of Defendants' liability, strictly, jointly and severally, for all such costs.  *Id*. at 9.  Defendants have denied all responsibility for the costs associated with the response and clean-up of the Palermo Wellfield Superfund Site.  Dkts. 10

& 15.

## PLAINTIFF'S MOTION FOR AN ORDER LIMITING REVIEW TO ADMINISTRATIVE RECORD AND MOTION FOR PROTECTIVE ORDER LIMITING DISCOVERY

On June 29, 2006, Plaintiff filed a motion for a protective order limiting discovery. Dkt 57. While Plaintiff's motion brief focuses primarily on limiting discovery, Plaintiff makes two separate and distinct requests. First, Plaintiff requests that the Court limit its review of the EPA's selection of response actions (i.e., remedy selection decisions) at the Palermo Wellfield Superfund Site solely to the administrative record unless Defendants can provide a valid reason for supplementing the administrative record. *Id.* at 3. Second, Plaintiff requests a protective order limiting discovery to preclude issues regarding the EPA's selection of response actions that go beyond the administrative record. *Id.* The Court has chosen to construe Plaintiff's brief as containing these two separate motions, and will discuss each in turn below.

In its motion brief, the United States alleges that Defendants have sought discovery beyond the scope of the administrative record regarding whether the EPA's selection of response actions at the Palermo Wellfield Superfund Site was appropriate, and fears that Defendants will continue to do so. *Id.* at 5. Specifically, the United States alleges that Defendant WSDOT recently questioned a deponent regarding the reasons for the EPA's selection of specific response actions, and the United States anticipates that one or both Defendants will continue to pursue this line of questioning in upcoming depositions of EPA employees. *Id.* at 5-6. Additionally, Defendant WSDOT has recently disclosed expert opinions challenging the EPA's response action selections, and the United States expects that both Defendants intend to depose the United States' expert witnesses on this topic. *Id.* at 6.

As authority for its motions, the United States cites Section 113(j) of CERCLA, which provides that "judicial review of any issues concerning the adequacy of any response action taken" by the EPA "shall be limited to the administrative record." *See* 42 U.S.C. §§ 9613(j)(1). The United States further contends that the Court must uphold the response actions selected by the EPA "unless the objecting party can demonstrate, on the administrative record, that the decision was arbitrary and capricious or otherwise not in accordance with law." *See* 42 U.S.C. §§ 9613(j)(2).

In its Response, Defendant WSDOT states that it intends to show that the EPA's decisions at

1  the Palermo Wellfield were arbitrary and capricious because the administrative record does not

2  support those decisions.  Dkt. 65 at 2-3.  Moreover, Defendant WSDOT contends that discovery

3  should be permitted to include issues beyond the administrative record because the record does not

4  demonstrate that the EPA considered all the relevant factors and does not explain the grounds for the

5  EPA's decision.  *Id.* at 4.  Defendant WSDOT has already deposed three EPA officials who were

6  involved at the Palermo Site, and plans to depose one more.  *Id.*  Pursuant to the Court's Order on

7  January 24, 2006, discovery is to be completed by July 21, 2006.  Dkt. 33.

8  ## APPLICABLE STANDARDS

9  Section 113(j) of CERCLA provides that judicial review of the EPA's remedy selection

10  decisions must be based on the administrative record, applying the arbitrary and capricious standard.

11  *See* 42 U.S.C. § 9613(j); *Washington State Dept. of Transp. v. Washington Natural Gas Co.*, 59 F.3d

12  793, 802 (9th Cir. 1995) (applying 42 U.S.C. 9613(j)).

13  Section 113(j)(1) of CERCLA, entitled "Judicial review," provides:

14  (1) Limitation

15  In any judicial action under this chapter, judicial review of any issues concerning the
   adequacy of any response action taken or ordered by the President [through the EPA]
16  shall be limited to the administrative record.  Otherwise applicable principles of
   administrative law shall govern whether any supplemental materials may be considered
17  by the court.

18  (2) Standard

19  In considering objections raised in any judicial action under this chapter, the court shall
   uphold the President's decision in selecting the response action unless the objecting
20  party can demonstrate, on the administrative record, that the decision was arbitrary and
   capricious or otherwise not in accordance with law.

21
22  (3) Remedy

23  If the court finds that the selection of the response action was arbitrary and capricious
   or otherwise not in accordance with law, the court shall award (A) only the response
   costs or damages that are not inconsistent with the national contingency plan, and (B)
24  such other relief as is consistent with the national contingency plan.

25  *See* 42 U.S.C. § 9613(j).

26  An agency's decision is arbitrary and capricious if:

27  ... the agency has relied on factors which Congress has not intended it to consider,
   entirely failed to consider an important aspect of the problem, offered an explanation for
28  its decision that runs counter to the evidence before the agency, or is so implausible that
   it would not be ascribed to a difference in view or the product of agency expertise.

ORDER
Page - 6

*See Inland Empire Pub. Lands Council v. Glickman*, 88 F.3d 697, 701 (9th Cir. 1996) (quoting *Motor Vehicles Mfgrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). The factors that Congress intended the EPA to consider when selecting a remedy under CERCLA are set forth in the national contingency plan ("NCP"). *See* 42 U.S.C. § 9604(a)(1).

In providing for deferential review on the administrative record, CERCLA conforms to established rules of administrative law. *See e.g. United States v. Iron Mountain Mines, Inc.*, 987 F. Supp. 1250, 1255 (E.D. Cal. 1997); *United States v. Seymour Recycling Corp.*, 679 F. Supp. 859, 861 (S.D. Ind. 1987); *United States v. Princeton Gamma-Tech, Inc.*, 817 F. Supp. 488, 492 (D.N.J.) (citing the Administrative Procedures Act, 5 U.S.C. § 706(2)(A)) *reversed on other grounds*, 31 F.3d 139 (3rd Cir. 1994). The statutory rule of deference reflects Congress' judgment that, unlike a reviewing court, the EPA has the specialized knowledge and expertise needed to choose the appropriate cleanup method. *See Washington Natural Gas*, 59 F.3d at 802; *United States v. Akzo Coatings of Am., Inc.*, 949 F.2d 1409, 1424 (6th Cir. 1991).

## DISCUSSION

The United States moves to limit review of the response actions selected by the EPA for the Palermo Wellfield Superfund Site to the administrative record. At issue is the Record of Decision (ROD) discussed above. The United States also seeks a protective order limiting discovery of any issues that go beyond the administrative record with regard to the response actions selected by the EPA for the Palermo Wellfield Superfund Site. These two motions will be discussed as follows:

**A.      MOTION TO LIMIT REVIEW OF THE EPA'S RESPONSE ACTIONS TO THE ADMINISTRATIVE RECORD**

Plaintiff contends that Defendants should be limited to the administrative record when advancing arguments that the response actions selected by the EPA were inconsistent with the national contingency plan, or arbitrary and capricious, or otherwise not in accordance with the law. Under CERCLA, judicial review generally is limited to the administrative record as it existed at the time of the agency action. *See Camp. v. Pitts*, 411 U.S. 138, 142 (1973); *Thompson v. Dept. of Labor*, 885 F.2d 551, 555-56 (9th Cir. 1998). Thus, as a general rule, information created or discovered after an agency has made a decision will not be considered. *See United States v. Amtreco, Inc.*, 806 F. Supp. 1004, 1007 (M.D. Wis. 1992) (citing *Wisconsin Elec. Power Co. v. Costle*, 715 F.2d 323 (7th Cir.

1   1983).  This includes documents, deposition testimony, and expert opinions generated during the

2   course of litigation.  *See Iron Mountain Mines, Inc.*, 987 F. Supp. at 1260.

3          Section 113(j) does provide, however, that "applicable principles of administrative law shall

4   govern whether any supplemental materials may be considered by the court."  *See* 42 U.S.C. §

5   9613(j)(1).  Principles of administrative law require that the administrative record be supplemented

6   where: (1) the agency has failed to explain its actions, making judicial review of whether the agency

7   has considered all relevant factors impossible; (2) the agency has relied on documents or materials not

8   included in the record; (3) supplementation is necessary to explain technical terms or complex subject

9   matter involved in the agency action; or (4) a strong showing of agency bad faith is made.  *See Inland*

10  *Empire*, 88 F.3d at 703-04 (citing *Friends of the Payette v. Horseshoe Brand Hydroelectric Co.*, 988

11  F.2d 989, 997 (9th Cir. 1993) and *Nat'l Audubon Soc'y v. U.S. Forest Serv.*, 46 F.3d 1437, 1447 n.9

12  (9th Cir. 1994)); *Animal Def. Council v. Hodel*, 840 F.2d 1432, 1436-37 (9th Cir. 1988).  The party

13  challenging the adequacy of the administrative record or the administrative process has the burden of

14  showing that supplementation is warranted.  *See Princeton Gamma-Tech*, 817 F. Supp. at 493;

15  *Amtreco*, 806 F. Supp. at 1005.

16         In the instant case, Defendants have argued that the administrative record does not

17  demonstrate that the EPA considered all relevant factors and does not explain the grounds for the

18  EPA's decision.  Moreover, Defendants have argued that supplementation through discovery is

19  necessary to explain technical terms and complex subject matter.  Defendants have failed, however, to

20  adequately develop any of these arguments to meet their burden of showing that supplementation is

21  warranted.  Defendants have not pointed to anything in the administrative record to support their

22  arguments, nor have they explained how, exactly, the record is lacking or how supplementation

23  through discovery will help to explain technical terms and complex subject matter in this case.

24  Moreover, Defendants have failed to explain why the administrative record needs to be supplemented

25  with specific regard to the *response actions* selected by the EPA.  Therefore, given the strong and

26  clear intent behind Section 113(j)(1) of CERCLA to limit judicial review to the administrative record

27  in the absence of the above exceptions, Plaintiff's motion to limit review of the EPA's selection of

28  response actions to the administrative record should be granted.

1   **B.      PLAINTIFF'S MOTION FOR A PROTECTIVE ORDER LIMITING DISCOVERY**

2          The United States also seeks a protective order limiting discovery of any issues that go beyond

3   the administrative record with regard to the response actions selected by the EPA for the Palermo

4   Wellfield Superfund Site.  The United States argues that such an order is consistent with Fed. R. Civ.

5   P. 26(b), which requires that discovery be "reasonably calculated to lead to the discovery of admissible

6   evidence."  Pursuant to Fed. R. Civ. P. 26(c)(1), counsel for the United States has filed a certificate

7   stating that she has attempted to confer with all parties in this matter in an effort to solve this dispute

8   before filing this motion for a protective order.  Dkt. 57(2).

9          Given that the Court has decided to grant Plaintiff's motion to limit review of the EPA's

10  response actions to the administrative record, Plaintiff's request for a protective order to limit

11  discovery is appropriate under the circumstances.  *See Hayasupai Tribe v. Robertson*, 943 F.2d 32, 34

12  (9th Cir. 1991) (affirming district court's limitation of the scope of its review to the administrative

13  record and prohibiting discovery when parties pointed to nothing in support of their contention that

14  the agency had acted in bad faith or relied on materials outside the record); *Animal Defense Council*,

15  840 F.2d at 1436-1438 (affirming district court's limitation of review to administrative record and

16  prohibiting discovery because plaintiffs did not show record presented was insufficient for review or

17  applicability of any of the exceptions to the general rule that review of agency action is limited to the

18  record), *modified*, 867 F.2d 1244 (9th Cir. 1989).  Plaintiff's request for a protective order should be

19  granted.

20                                        **ORDER**

21          Therefore, it is hereby

22          **ORDERED** that Plaintiff's Motion for a Protective Order and to Limit Discovery Pursuant to

23  Section 113(j) of CERCLA (Dkt. 57) is **GRANTED** as follows:

24          (1) Plaintiff's motion to limit review of the response actions selected by the EPA for the

25  Palermo Wellfield Superfund Site to the administrative record is **GRANTED**, and

26          (2) Plaintiff's motion for a protective order limiting discovery to preclude issues that go

27  beyond the administrative record with regard to the response actions selected by the EPA for the

28  Palermo Wellfield Superfund Site is **GRANTED**.

The Clerk of the Court is instructed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

DATED this 17th day of July, 2006.

Robert J. Bryan
United States District Judge

ORDER
Page - 10